UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CARL D. ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:20-CV-47-JVB |
| ) | |
| ANDREW SAUL, Commissioner of the ) | |
| Social Security Administration, ) | |
|       Defendant. ) | |

## OPINION AND ORDER

Plaintiff Carl D. seeks judicial review of the Social Security Commissioner's decision denying his claim for disability insurance benefits and supplemental security income and asks the Court to remand this case for further administrative proceedings. For the reasons given below, the Court reverses the decision of the Commissioner of Social Security and remands the matter.

## PROCEDURAL BACKGROUND

In his application for disability insurance benefits and supplemental security income, Plaintiff alleged that he became disabled on January 23, 2013. In a prior decision, dated November 7, 2016, Plaintiff was found not disabled, but the Court reversed that decision and remanded the case to the Commissioner. After a second hearing, an Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of coronary artery disease with history of myocardial infarction, status post bypass and stenting with angina, obesity, status post right knee surgery, chronic obstructive pulmonary disease, obstructive sleep apnea, major depressive disorder/bipolar disorder, generalized anxiety disorder, and posttraumatic stress disorder. (AR 1288). The ALJ found that Plaintiff is unable to perform any past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff can perform. (AR 1305). Therefore, the ALJ found Plaintiff not disabled from January 23, 2013 through the date of the ALJ's decision.

(AR 1306). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## ANALYSIS

Plaintiff argues that the ALJ improperly analyzed Listing 12.04, erred in evaluating the medical opinions, provided insufficient reasons to discount his subjective allegations, and failed to properly account for his mental limitations.

2

**A. Listing 12.04**

At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. See 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. See *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

The ALJ found that Plaintiff's severe mental impairments did not meet or medically equal the criteria of Listing 12.04 ("Depressive, bipolar, and related disorders"), among other listings. A claimant can meet Listing 12.04 by meeting the Paragraph 'A' and 'C' criteria for that listing. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.04.[1] To meet the 'C' criteria, the impairment must be "serious and permanent," with significant evidence of ongoing medical treatment and "marginal adjustment" (defined as having "minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life"). *Id.* The ALJ found that Plaintiff did not meet the 'C' criteria, and specifically that the record did not show evidence of marginal adjustment. (AR 1292).

Plaintiff objects that the ALJ did not adequately explain her Paragraph 'C' findings, and that there was significant evidence of marginal adjustment. The Court does not find meaningful

---

[1] The listing criteria changed on January 17, 2017, which was after the state agency consultants gave their opinions but before the ALJ's decision. Although Plaintiff argues the ALJ should have sought a new medical opinion to address the new criteria, this does not require remand. *See* Social Security Ruling 17-2p, 2017 WL 3928306, *3-4 (Mar. 27, 2017) (explaining that ALJs determine whether a listing is met or equaled, and "*may* ask for and consider evidence from medical experts") (emphasis added).

3

error here. Although the ALJ must "offer more than a perfunctory analysis of the listing," *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)), the claimant bears the burden of proving that his condition meets the criteria of a listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). Plaintiff points to a regulation indicating that medication changes, hospitalizations and absences from work can be examples of "marginal adjustment" that satisfy Paragraph 'C'. *See* 20 C.F.R. 404, Subpt. P, App. 1, § G.2.c. He provides several examples of his medication changes and hospitalizations. However, while these events are recognized as potential evidence of marginal adjustment, it does not follow that all medication changes or hospitalizations satisfy the criteria. *See id*. ("[D]eterioration *may have* necessitated a significant change in medication . . . evidence *may* document episodes of deterioration that have required you to be hospitalized") (emphasis added).

The Paragraph 'C' criteria address the situation where symptoms are not necessarily "extreme,"[2] but are "serious and persistent," and could worsen if the person had to significantly change their daily routine. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.04(C). Therefore, for the Paragraph 'C' criteria, it is not enough to identify symptoms or treatment – there must be "changes or increased demands [that] have led to exacerbation of your symptoms and signs and to deterioration in your functioning." *Id*. Although the medication changes support Plaintiff's claims of mental impairments generally, they do not show that his symptoms arose from changes in his environment or new demands. *See* (AR 1274, 1770, 1775). Similarly, while a medical provider found that Plaintiff had three extended "episodes of decompensation," those were defined broadly as "exacerbations or temporary increases in symptoms . . . accompanied by a loss of adaptive functioning." (AR 2131). Since these facts do not establish the Paragraph 'C' criteria, the ALJ did

---

[2] A separate section, Paragraph B, provides for a finding of disability based solely on "extreme" limitations in mental functioning. *See* 20 C.F.R. 404, Subpt. P, App. 1, § 12.04(B).

not commit error by failing to discuss them in the listing analysis. In her discussion of the evidence at step four, the ALJ explained her findings regarding Plaintiff's ability to adapt to the demands and changes in his routine that would arise in a work setting. *See* (AR 1302-1304). Accordingly, the Court finds that the ALJ's discussion of the listing was adequate and Plaintiff has not met his burden to show that his impairments met these criteria.

### B. Opinion Evidence

Next, Plaintiff argues that the ALJ erred in assessing a May 30, 2019 medical opinion form attributed to nurse practitioner Rick Cain. The form indicated that Plaintiff would miss more than four days of work per month due to his mental impairments, and would struggle to maintain attention for two hours at a time. (AR 2128, 2132). The ALJ discounted the opinion because the limitations exceeded what was written in Cain's treatment notes, the record indicated that Plaintiff had worked as a driver, and Plaintiff's own reports of no suicidal ideation contradicted Cain's report that he had suicidal impulses, among other reasons. (AR 1304).

Plaintiff first argues that the ALJ misattributed the opinion to Cain, when it should have been attributed to treating psychiatrist Samir Ishak. The opinion is signed in Cain's name[3], but the last page of the form indicates: "If this form was not completed by a psychologist or psychiatrist, please have the attending [psychiatrist] review the response and respond below indicating whether and to what extent she or he agrees with the findings and limitations." (AR 2133). This extra page was signed by Ishak, but contained no response or comment as to whether he agreed with the findings. Although Ishak apparently reviewed the form, the record does not show that this was his

---

[3] The ALJ also noted that, although the form was signed in Cain's name, the handwriting did not match Cain's handwriting elsewhere in the record. On this point, the ALJ should have followed up with the medical provider rather than citing this as a reason to discount the opinion. *See* Social Security Program Operations Manual (POMS) DI 22505.008(A) (when medical evidence contains "material inconsistencies or insufficiencies," ALJs should attempt to obtain supplemental evidence). Nonetheless, for the reasons described herein, the Court finds that the ALJ's decision to discount Cain's opinion was supported by substantial evidence.

opinion. Given that the form was signed in Cain's name, and there is no evidence of any comment or input by Ishak, the Court finds no error with the ALJ's conclusion that this was Cain's opinion rather than Ishak's.

Because Cain is a nurse practitioner, he is neither a "treating source" nor an "acceptable medical source" for purposes of the SSA's regulations. *See Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010) ("A nurse-practitioner ... is not a 'treating source.' "); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) (defining "other sources" as including "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners"); *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (a "treating source" must be an "acceptable medical source"). However, the ALJ must still consider opinions from medical sources who are not classified as "acceptable" sources, and "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." *See* 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Therefore, the ALJ must consider the length and nature of the treating relationship, and whether the opinion is consistent with the record and supported by objective evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Plaintiff challenges the ALJ's reasons for discounting the opinion. For example, the ALJ noted that although Cain's limitations "would preclude any type [of] meaningful work performance or interactions," Plaintiff had been working[4] as a driver in 2017, until his license was revoked. Although this fact alone is not probative of Plaintiff's ability to work a full-time job, since it is unclear how long or how often he drove, the ALJ adequately explained her reasoning

---

[4] Specifically, Plaintiff reported that he was a "personal driver for an Amish family." (AR 1777).

6

that Plaintiff's prior work as a driver cuts against Cain's opinion that Plaintiff would have severe difficulties interacting with others at work.

Plaintiff also takes issue with the ALJ's conclusion that Cain's treatment notes did not support the limitations Cain suggested for Plaintiff. Plaintiff points out that Cain's notes repeatedly document Plaintiff's generalized anxiety, mood disturbance, and sleep problems. The ALJ specifically found that the limitations "exceed" the observations in the treatment notes; i.e., the general reports of anxiety, mood and sleep issues did not establish that Plaintiff was as limited as Cain described. While Cain's notes are not the only factor in assessing the opinion, the ALJ could properly observe that the absence of notes clearly indicating that Plaintiff was not capable of going to work – as opposed to general complaints of anxiety or mood – gave less weight to the opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(f)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Similarly, the ALJ could properly note that although Cain reported Plaintiff had suicidal impulses and "death wishes," he frequently denied suicidal thoughts during treatment. Although another ALJ may have viewed Cain's opinion differently, the Court finds that the ALJ adequately explained her reasons for discounting the opinion based on the appropriate regulatory factors.

## C. Cardiac Impairments

Plaintiff next argues that the ALJ should have sought an updated medical opinion to address evidence of his worsening heart condition. The ALJ recited medical evidence of Plaintiff's cardiac treatment since the alleged onset date in 2013. In brief, the ALJ summarized that Plaintiff complained mostly of fatigue, but his condition was generally controlled with medication, until

March 2015 when he suffered a heart attack. In February 2016, an emergency care provider noted that he was transferred to a hospital regarding a "possible" heart attack, but no records were offered from the hospital. He was occasionally seen in 2016 and 2017 for follow-up appointments and complaints of fatigue and chest pain. In June 2018, he reported daily chest pain, and had another heart attack on December 5, 2018, requiring stenting and angioplasty, but "subsequent cardiology records reflect the claimant has done well." (AR 1296-1297).

The ALJ considered a 2014 medical opinion from consultative examiner indicating that he could "perhaps perform sedentary work duties, at least on a part-time basis," but assigned it "limited weight" because it was inconsistent with the record. (AR 1299). The ALJ also considered the opinions of two other consultative examiners from January 2015, restricting Plaintiff to a reduced range of light work. Each of these medical opinions was submitted before Plaintiff's heart attacks. Ultimately, the ALJ limited Plaintiff to a reduced range of sedentary work, based "primarily" on his cardiac history.[5] (AR 1293, 1295, 1297).

"An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018); *see also Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("Fatally, the administrative law judge failed to submit that MRI to medical scrutiny, as she should have done since it was new and potentially decisive medical evidence."). In this case, the ALJ failed to secure a medical opinion on significant new medical evidence. After the final consultative opinions in January 2015, Plaintiff suffered two heart attacks – one in March

---

[5] Specifically, the ALJ found that Plaintiff had the severe impairment of "coronary artery disease with history of myocardial infarction, status post bypass, and stenting with angina." (AR 1288).

8

2015, and one in December 2018.[6] The ALJ concluded that Plaintiff's condition had indeed worsened by 2018, but that he was still capable of sedentary work: "While the evidence support[s] a decline in cardiac function . . . it does not establish cardiac symptoms prevented all work activity throughout the period at issue."

It appears that the ALJ "played doctor" in concluding, based on her review of the evidence, that the decline in Plaintiff's condition did not affect his ability to work. Among other findings, the ALJ noted that the "post-procedure course" after Plaintiff's stenting and angioplasty was "unremarkable"; Plaintiff was recorded to be "well-appearing" at several follow-up visits; another doctor's note indicated that he was "doing well"; and he denied various symptoms at follow-up visits. (AR 1296-97). But indications that someone is "doing well" shortly after a heart attack, or an absence of acute symptoms on examination, is not the same as an endorsement of fitness to work. A medical professional is best positioned to decide the significance of those findings. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[A]dministrative law judges of the Social Security Administration[] must be careful not to succumb to the temptation to play doctor. . . . Common sense can mislead; lay intuitions about medical phenomena are often wrong."); *see also e.g., Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[] doctor and reach[] his own independent medical conclusion"); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Given that the limitation to sedentary work was based "primarily" on Plaintiff's heart conditions, and the ALJ's finding that Plaintiff's condition had worsened, the heart attacks were "new and potentially decisive medical evidence." The ALJ's failure to seek a medical opinion addressing this evidence requires remand.

---

[6] The record contains additional evidence of Plaintiff's worsening heart condition, such as the discovery of a new lesion on an August 2018 EKG. (AR 2178).

**D. Plaintiff's Testimony**

Although the failure to seek an updated medical opinion requires remand, the Court also addresses Plaintiff's argument regarding the ALJ's treatment of his testimony. An ALJ must consider a claimant's statements about his or her symptoms, including pain, and how these symptoms affect the claimant's activities of daily living and ability to work. 20 C.F.R. §§ 404.1529(a), 416.929(a). ALJs must weigh the subjective complaints, the relevant objective medical evidence, and any other evidence of the following:

> (1) The individual's daily activities;
> (2) Location, duration, frequency, and intensity of pain or other symptoms;
> (3) Precipitating and aggravating factors;
> (4) Type, dosage, effectiveness, and side effects of any medication;
> (5) Treatment, other than medication, for relief of pain or other symptoms;
> (6) Other measures taken to relieve pain or other symptoms;
> (7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

The ALJ rejected some aspects of Plaintiff's testimony without adequate analysis. For example, Plaintiff claimed he did not leave his house often because he was afraid and struggled to get along with others. The ALJ found that testimony inconsistent with the evidence, noting that he spent time with a girlfriend in February 2016, spent time with friends in January 2019, maintained "at least one very good friendship," and was "capable of appropriate interactions with treating sources," including at an emergency room in 2014. (AR 1291). Although these are relevant examples, they do not form a "logical bridge" to the ALJ's conclusion that his alleged fear of going outside was unsupported. A person who needs medical attention, particularly in an emergency, has little choice but to leave the house and talk to medical providers. The fact that Plaintiff has had friends, or a girlfriend, or occasionally leaves the house, does not invalidate his testimony that he was afraid to go outside. *See Larson v. Astrue*, 615 F.3d 744, 752 (7th Cir. 2010) ("Larson's ability

to maintain a small number of close friendships does not undermine her testimony that she is afraid of going out in public. . . .[T]he ALJ's conclusion that Larson accommodated her fear of going out in public does not discredit her testimony that she has a fear of going out in public and gives in to that fear regularly."). On remand, the ALJ is reminded that in the context of mental illness, isolated counterexamples do not necessarily discredit a person's general testimony about his limitations. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("As we have explained before, a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.").

## CONCLUSION

Because the case is remanded, the Court does not address Plaintiff's remaining arguments. Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 12], **REVERSES** the decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on February 3, 2021.

s/ Joseph S. Van Bokkelen<br>
JOSEPH S. VAN BOKKELEN, JUDGE<br>
UNITED STATES DISTRICT COURT

11